1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| CAROLYN YATES, | ) | 1:08cv01466 GSA |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

11
12
13
14
15
16
17
18

19

**BACKGROUND**

20

Plaintiff Carolyn Yates (Plaintiff) seeks judicial review of a final decision of the

21 Commissioner of Social Security (Commissioner) denying her application for supplemental

22 security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

23 the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

24 Gary S. Austin, United States Magistrate Judge. [1]

25
26
27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 22, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1                                      **FACTS AND PRIOR PROCEEDINGS**[2]

2       On June 22, 2005, Plaintiff filed an application for supplemental security income,

3 alleging disability since August 1, 2003, due to problems with her heart, arm, shoulder, neck,

4 back and nerves, as well as carpal tunnel syndrome and arthritis. AR 81, 123,189. The

5 application was denied initially and upon reconsideration. AR 11.  Plaintiff then requested a

6 hearing before an Administrative Law Judge ("ALJ").  *Id*.  ALJ Bert C. Hoffman, Jr. held a

7 hearing on May 1, 2007, and issued an order denying benefits on May 25, 2007.  *Id*.  On August

8 7, 2008, the Appeals Council denied review.  AR 1.

9      Hearing Testimony

10        ALJ Hoffman held a hearing on May 1, 2007, in Fresno, California.  Plaintiff appeared

11 and testified.  She was accompanied by her attorney, Melissa Proudian. AR 11.

12       Plaintiff stated her date of birth and claimed she was forty-one years old at the time of the

13 hearing. AR 20. Plaintiff claimed that her current weight was 192 pounds, although that figure

14 represents a departure from her normal weight. Her normal weight is usually around 185 pounds,

15 which is what she weighed a year ago. *Id.* Plaintiff was unable to identify any particular reason

16 for the weight gain.

17       Plaintiff was single at the time of the hearing, and has a son and a daughter aged

18 seventeen. AR 21, 64. She lives alone. Plaintiff does not currently have a valid California

19 driver's license although she had one in the past. However, her privilege was suspended due to

20 speeding. She claimed that she received her last speeding ticket in 1996, and that she would

21 probably qualify for a license now. AR 22. Plaintiff stated that the last time she drove any

22 vehicle, any distance, with or without a license was about a year ago. AR 23. On that occasion,

23 she had driven to the store in her niece's car. *Id*.  Nowadays, her sister takes her to the store. *Id*.

24       Plaintiff has a boyfriend named John Howard whom she has known for about eight years

25 now. AR 23. Plaintiff and her boyfriend meet up every other day.  Her boyfriend is a secretary at

26

27              —————————

28             [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

the "VA" hospital. *Id*. Plaintiff met her boyfriend when she was out once with her sister and one of her friends. *Id*.

Plaintiff has completed her education up to the eleventh grade. AR 24. She never went back to get a General Educational Development (GED) or a diploma. *Id*. Plaintiff has never been involved in any kind of vocational training and is currently unemployed. *Id*. The last time she recalled earning any money was when she was babysitting her grandson at her home. Plaintiff would watch him for four or five hours during the day. *Id*. She last babysat her grandson about a year and half ago; he is now two years old and is currently looked after by his other grandmother. AR 24. Plaintiff still gets to see her grandson occasionally, for about an hour or so. AR 26. She estimated that she had babysat for about four months at a stretch. When Ms. Proudian showed Plaintiff a work history report Plaintiff had previously completed, Plaintiff changed her mind and stated that she had only worked about two months, four to five hours per day. *Id*. Plaintiff's gross income varied from $100 to $200 a month. AR 27.

The ALJ then asked Plaintiff whether she had been involved in any formalized child care in 2003, when she had made about $10,478. AR 27. Plaintiff denied having earned that kind of salary.[3] AR 28. Nevertheless, Plaintiff admitted to having worked from January through August of 2003. *Id*.  During that time, Plaintiff babysat the lady's two daughters in her own home. Plaintiff's sister would often help if the children needed to be driven somewhere. AR 30. Their mother usually dropped them off and picked them up afterwards. *Id*.

At the time of the hearing, Plaintiff was unemployed and was on "AFDC" with her daughter. *Id*. That support ended in September. Plaintiff states that she cannot work eight hours a day, five days a week because she often wakes up feeling stiff. Plaintiff suffers from pain in her neck and back and often feels short of breath. AR 31. The pain travels to the right side of the face. According to Plaintiff, she has lost a lot of hair from the right side of her head because of the constant massaging. AR 32. The neck pain is a daily occurrence, often occurring in the

---

[3] Plaintiff explained that the lady she was babysitting for was under investigation for fraud, and that the $10,478 might have been paid to Plaintiff as money owed to her for babysitting.  In other words, the lady may have fraudulently reported paying Plaintiff's wages, although Plaintiff's contention is unclear.

vicinity of a past bullet wound. AR 33. The pain often radiates to the right side of the jaw. Plaintiff could not point out with certainty when she was shot. It could have been anywhere between 1990 to 1994. *Id*. According to Plaintiff's doctor, metallic remnants showed up on an x-ray. *Id*. Sometimes the back pain is unconnected to the pain in the neck. On a scale of one-to-ten, Plaintiff rates her neck pain an eight. AR 34. Although Plaintiff takes Tylenol #3 for the pain, it only soothes the pain for a short while without completely eliminating it. The relief only lasts about an hour, and so sometimes Plaintiff takes a warm shower "to loosen up a little." *Id*. Plaintiff also has difficulty moving her head from side to side, especially in the mornings. Sometimes the stiffness persists throughout the day. On average, this happens five times a week. AR 35. On other days, she can move her head, but with some discomfort. AR 35. Plaintiff is also unable to raise her head without experiencing some pain. Her neck pain is exacerbated by cold weather, or air conditioning. *Id*.

The back pain occurs mostly in the mid back, usually in the morning and dissipates within an hour, or an hour and a half. AR 36. Plaintiff rates the back pain a seven on a one-to-ten scale. Tylenol does not seem to help; in fact, it gives Plaintiff a stomach ache. *Id*. The stomach upset is often caused by taking the pill on an empty stomach. Plaintiff takes Tylenol every day, and every day it makes her nauseous. *Id*. The nausea lasts for an hour or two. Although Plaintiff has considered eating something before taking the Tylenol, the medication still makes her sick. Her doctor has advised her to take the Tylenol with milk, but it is not a beverage Plaintiff favors.

Although Plaintiff is able to sit in a chair, she likes to lean forward, rather than sit upright. This, according to Plaintiff, prevents some of the back problems. AR 38. Plaintiff can only sit for forty minutes at a stretch before having to get up and move around. AR 39. She can stand in one place for about thirty minutes at a time, and can walk about half a block before she has to stop. *Id*. Although Plaintiff can "scoot" something up to thirty pounds, she can actually only lift about twenty pounds. AR 40.

Plaintiff also has problems with her right hand, particularly in the palm area where the thumb and index finger connect to the hand. AR 32. She also has difficulty reaching overhead with her right arm. Usually, the pain radiates down her neck and shoulders, and all the way down

4

1   to her right hand. AR 41. However, Plaintiff is able to reach overhead with her left arm. *Id*.

2   Plaintiff cannot use the right arm repetitively when she feels pain. Sometimes, the pain is

3   concentrated around the right thumb area. *Id*. The pain travels up the inner region of the forearm

4   on occasion. AR 42. During the month prior to the hearing, Plaintiff experienced pain in her arm

5   almost every day. Her right hand  had not bothered her before then. *Id*. Plaintiff could not think

6   of any injury that might have precipitated the pain in the right hand. She was being seen by

7   Andrew F. Krolikiewicz, M.D., at Sunnyside Medical Office, who told her she might be suffering

8   from carpal tunnel syndrome, and that she may want to consider surgery. AR 44-45. Plaintiff

9   wanted to get a second opinion because she was aware of circumstances where the surgery had

10  not been very successful. AR 45. Plaintiff had never been tested for carpal tunnel syndrome

11  before, although she was aware of an "EMG" and nerve conduction test that had been conducted

12  on her in June of 2005.  *Id*. Plaintiff vaguely recalled having been told of right carpal tunnel

13  syndrome at that time.  AR 46. According to Plaintiff, the previous tests had been performed for

14  some other reason. *Id*.

15          At present, Plaintiff still has problems grasping things with her right hand. AR 46. Her

16  hand sometimes trembles and hurts when she attempts to do so. *Id*.  Plaintiff has trouble handling

17  both large and small items with her right hand. AR 47. Plaintiff can turn a key to unlock a door if

18  it unlocks easily, but has difficulty combing her hair or brushing her teeth. *Id.* Although Plaintiff

19  can handle cutlery without much difficulty, she cannot cut through tough meat. *Id*.

20          Plaintiff also has difficulty standing on her right leg. Sometimes it tingles and her feet go

21  numb. *Id*. Sometimes it hurts in the morning as well. *Id*.

22          Further, Plaintiff has a hard time breathing, particularly when she is sweeping or trying to

23  mop the floor. AR 48. Plaintiff usually gets out of breath during exertive activities. She has no

24  such problem when she is sitting still. *Id*. Plaintiff uses an inhaler when she feels short of breath,

25  and has to sit down or lay down so that her breathing can return to normal. *Id.* It takes about

26  twenty minutes. It may take longer for Plaintiff's breathing to return to normal without the aid of

27  the inhaler, for instance, when she is outside. AR 49. Once, years ago, Plaintiff had to be taken to

28  the emergency room due to her breathing problem. Plaintiff currently has a nebulizer. *Id*. She has

1  never been put on prednisone medication for this condition. AR 50. Dr. Krolikiewicz also treats

2  Plaintiff for her breathing problems. *Id*. Other than the inhalers, Plaintiff has not been prescribed

3  related medications, although Dr. Krolikiewicz has repeatedly advised Plaintiff to stop smoking.

4  Plaintiff smokes at least a pack a day, sometimes more. AR 50. Plaintiff indicated she began

5  using a nicotine patch the day of the hearing. Plaintiff also mentioned other triggers that could

6  provoke shortness of breath. Among them, extreme temperature and excitement. *Id*. Although

7  Plaintiff is not disturbed by cleaning solvents, incense tends to aggravate her condition. *Id*.

8      With regard to Plaintiff's energy level, she stated she did not have a lot of energy. AR 52.

9  Plaintiff lays down frequently during the day, often twice a day for an hour or so each time.

10 Sometimes, even two hours at a time. *Id*. She usually lays down when she is feeling tired or

11 unwell. *Id*. This practice has been going on for a year and a half according to Plaintiff. *Id.*

12     Plaintiff sleeps well at night provided she is not disturbed by her neck or back pain. AR

13 53. She props up her pillows so that she can sleep comfortably. *Id*.

14     Plaintiff has no problem concentrating if she is not in any pain. In general, she can

15 concentrate for "a couple hours." AR 53.

16     Plaintiff does the cooking twice a day, while her daughter helps with the cleaning. *Id*.

17 Sometimes Plaintiff does the dishes, and at other times her daughter does them. *Id*. Her daughter

18 usually cleans the bathrooms, but Plaintiff cleans the kitchen. AR 54. Plaintiff does her own

19 laundry. Cleaning up is the most physically demanding job she does. AR 64. Her sister helps

20 with the grocery shopping about once a month. *Id.* If Plaintiff runs out of cigarettes in the

21 interim, her neighbor or her brother gets them for her. *Id*. Plaintiff's boyfriend does not smoke,

22 and she does not smoke around him. AR 55. Although Plaintiff smokes around the house, she

23 goes into the restroom when her grandson is around. AR 56.

24     Plaintiff has no hobbies, but watches television from about 11 a.m. to about 3 p.m. *Id*.

25 She also spends about two hours watching television before going to bed. Plaintiff enjoys

26 watching all the soaps, and occasionally tunes into "Oprah" and "Ellen." Plaintiff does not enjoy

27 watching "Dancing with the Stars." AR 58.

28

Plaintiff's mother lives in Kearney. She sees her about once every two weeks or so. *Id*. Plaintiff's sister lives in the same apartment complex as Plaintiff. Plaintiff's boyfriend lives nearby. *Id*.

On occasion, Plaintiff and her boyfriend go to the movies together. AR 59. They dine out once in a while, but do not go into town together often. *Id*. Plaintiff spent both Thanksgiving and Christmas with her sister last year. Sometimes however, Plaintiff avoids these family get togethers when she does not want to be bothered. AR 60.

 Plaintiff states she has two children, her daughter and her son. Her son is the eldest.  AR 64.  Plaintiff sees him off and on, he has a child of his own.  He does not have a car or license. AR 64.  Plaintiff's daughter attends J. E. Young, which is like a charter school.  AR 62. Her daughter goes there once a week because she is a little behind with regard to her credits. *Id*. Plaintiff's daughter can be difficult at times, mixing with the wrong crowd and not doing what she is supposed to. AR 63.

Plaintiff has not ridden a bus in a while.  AR 64.  Plaintiff does not attend church, although she feels she should.  AR 63.  Sometimes Plaintiff's sister will take her to the store, or to see her doctor, at other times the two will just sit and chat.  *Id*.

<u>Medical Record</u>

_____The entire record was reviewed by the court, however, only those portions relevant to the instant proceedings are briefly summarized below.

On June 7, 2005, Plaintiff visited the Sunnyside Medical Clinic (SMC) with complaints of arthritis pain, shortness of breath and chest pain. On that occasion, her treating physician, Dr. Krolikiewicz prescribed Tylenol #3 and diagnosed Plaintiff with posttraumatic arthritis in the neck. AR 172. He also advised her to quit smoking. *Id*. Using spirometry, Dr. Krolikiewicz determined Plaintiff had moderate obstruction in the lungs. *Id*.

A radiology report dated June 13, 2005, from the Community Regional Medical Center (CRMC) revealed that Plaintiff had normal cervical lordosis. There were moderate degenerative changes in the C5-C6 discs with narrowing of the discs and osteophytes at the disc margins. AR

165. The report also showed small metallic foreign bodies embedded in the soft tissue posterolaterally on the right, presumably related to a prior gunshot wound. *Id*.

A nerve conduction study dated June 30, 2005, conducted by Mythili Sundaresan, M.D., showed electrophysiological evidence of right carpal tunnel syndrome, bilateral brachial plexopathy, and bilateral C5, C6 and C8 root lesion. AR 167-169.

A chart note dated July 7, 2005, from SMC written by Dr. Krolikiewicz, notes his earlier findings of posttraumatic arthritis and mentions chronic obstructive pulmonary disease (COPD), congestive heart failure (CHF) and carpal tunnel syndrome. AR 171.

On August 18, 2005, Bipin K. Joshi, M.D., examined Plaintiff for various heart-related complaints. His assessment included chest pain, shortness of breath, questionable history of hypertension, questionable history of CHF, arthritis and obesity. AR 236. Dr. Joshi also advised Plaintiff that it was in her best interest to quit smoking. *Id*.

On August 20, 2005, Plaintiff underwent a consultative internal medical evaluation performed by Board Certified Medical Internist, Steven Stoltz, M.D. Dr. Stoltz's diagnostic impression was: complaints of neck pain, right carpal tunnel syndrome, possible shortness of breath, history of gunshot wound in 1994 and hypertension. AR 173-177. Dr. Stoltz reported that he found no objective evidence of any ongoing medical disorders that would place any limits on Plaintiff's activities. AR 177. On that date, Plaintiff also underwent pulmonary function testing. According to Dr. Stoltz, results of this test were "fairly normal." AR 178.

On September 9, 2005, non examining state agency physician, Brian Ginsburg, M.D., reported Plaintiff had no exertional, postural, manipulative, visual or communicative limitations. However, he did advise that Plaintiff avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. AR 185. He also observed that the severity or duration of Plaintiff's symptoms, in his judgment, was disproportionate to the expected severity or expected duration on the basis of Plaintiff's medically determinable impairments. AR 186.

Dr. Joshi performed a follow-up examination of Plaintiff on October 25, 2005. In a progress note Dr. Joshi indicated that Plaintiff suffered from chest pain, shortness of breath, hypertension and the effects of smoking. AR 231. He also reported that Plaintiff did not have

1    ischemia. Dr. Joshi made certain recommendations to Plaintiff on that occasion. He reassured her

2    about her chest discomfort, advised her to continue with her cholesterol medication, and also

3    advised her to lose weight and to quit smoking. He communicated to Plaintiff the adverse

4    consequences if she continued to smoke. *Id*.

5    　　　　On December 12, 2005, Plaintiff visited Dr. Krolikiewicz at SMC and was once again

6    advised to exercise and quit smoking. AR 192.

7    　　　　James V. Glaser, M.D., a non-examining state agency physician, reviewed the findings of

8    Dr. Ginsburg on January 6, 2006, and affirmed Dr. Ginsburg's earlier findings. *See* AR 188.

9    　　　　In a progress note dated April 5, 2006, Dr. Joshi assessed Plaintiff with chest pain and

10   shortness of breath, hypertension, possible hyperlipidemia, and the effects of smoking.  AR 223.

11   Dr. Joshi advised Plaintiff to follow a diet low in sodium, cholesterol and fat. He also advised her

12   to quit smoking, and informed her about the importance of risk factor modification.  *Id*.

13   　　　　On April 7, 2006, Dr. Krolikiewicz examined Plaintiff at SMC and noted severe

14   obstructions in Plaintiff's lungs. Once again, he advised her to stop smoking.  AR 224.

15   　　　　In December, 2006, Dr. Krolikiewicz performed another spirometry test, which revealed

16   that Plaintiff had severe obstructions in the lungs. As in the past, he urged her to stop smoking.

17   AR 210.  Plaintiff's further visits with Dr. Krolikiewicz were unremarkable, but he continued to

18   warn her of the dangers of continued smoking.  AR 206-210.

19   　　　　<u>ALJ's Findings</u>

20   　　　　The ALJ determined that Plaintiff had not engaged in substantial gainful activity since

21   August 1, 2003, the alleged onset date, and that Plaintiff  had the severe impairment of COPD.

22   AR 13. The ALJ noted that Plaintiff's complaints of chest discomfort, status post gunshot wound

23   to the neck, cervical degenerative disc disease, and right carpal tunnel syndrome were slight

24   impairments which had only minimal, if any, effect on Plaintiff's ability to work.  *Id*.  The ALJ

25   determined that Plaintiff did not have a severe impairment or combination of impairments that

26   meets or medically equals one of the listed impairments.  *Id*.

27

28

1   Based on his careful consideration of the entire record, the ALJ found that Plaintiff

2   retained the residual functional capacity (RFC) to work at all exertional levels with asthma like

3   precautions.  AR 14.

4   The ALJ noted that Plaintiff had no past relevant work, had a limited education, and was

5   able to communicate in English.  AR 15. Taking into consideration Plaintiff's age, education,

6   work experience, and RFC, the ALJ concluded that there were jobs that existed in significant

7   numbers in the national economy that Plaintiff could perform.  *Id*.

8   The ALJ also found that considering Plaintiff's ability to perform work at all exertional

9   levels, and considering her age, education, and work experience, a finding of "not disabled"

10   would be directed by Medical-Vocational section 204.00.  AR 16.  In addition, the ALJ

11   commented that the additional nonexertional limitations would have little or no effect on the

12   occupational base of unskilled work at all exertional levels.  *Id*.

13   ## SCOPE OF REVIEW

14   Congress has provided a limited scope of judicial review of the Commissioner's decision

15   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

16   the Court must determine whether the decision of the Commissioner is supported by substantial

17   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

18   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

19   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

20   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

21   401.  The record as a whole must be considered, weighing both the evidence that supports and

22   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

23   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

24   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

25   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

26   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

27   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

28   Cir. 1987).

1

**<u>REVIEW</u>**

2       In order to qualify for benefits, a claimant must establish that he is unable to engage in

3  substantial gainful activity due to a medically determinable physical or mental impairment which

4  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

5  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

6  such severity that he is not only unable to do his previous work, but cannot, considering his age,

7  education, and work experience, engage in any other kind of substantial gainful work which

8  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

9  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

10  Cir. 1990).

11       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

12  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

13  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

14  found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of

15  her disability; (2) has an impairment or a combination of impairments that is considered "severe"

16  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

17  impairment or combination of impairments which meets or equals one of the impairments set

18  forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work as

19  she has none, and (5) retains the RFC to work at all exertional levels with asthma like

20  precautions.   AR 13, 14.

21       Here, Plaintiff argues that the ALJ impermissibly dismissed the opinions of lay witnesses

22  without articulating any reasons that are germane to each witness. In addition, Plaintiff contends

23  that the ALJ erred in failing to properly evaluate her subjective pain testimony. More specifically,

24  Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting

25  Plaintiff's subjective complaints. Therefore, Plaintiff contends that this Court should reverse and

26  order the immediate payment of benefits, or in the alternative, remand for further administrative

27  proceedings to correct the alleged deficiencies.

28

1

**DISCUSSION**

2    A.    Lay Witness Testimony

3          Plaintiff contends that the ALJ erred in failing to properly evaluate the statements of the

4    two lay witnesses, Diane Stokes - who is Plaintiff's older sister, and Angela Hernandez - who has

5    been acquainted with Plaintiff for the last seven years. More specifically, Plaintiff argues that the

6    ALJ improperly disregarded both witnesses' statements without articulating any reasons germane

7    to each witness.

8          In determining whether a claimant is disabled, an ALJ must consider  lay witness

9    testimony concerning a claimant's ability to work. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

10   1993). "Lay testimony is not equivalent of medically acceptable diagnostic techniques that are

11   ordinarily relied upon to establish disability." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d

12   1393, 1395 (9th Cir. 1984). However, lay witness testimony as to a claimant's symptoms is

13   competent evidence which the Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d

14   at 919. Such testimony is competent evidence and cannot be disregarded without comment.

15   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ must consider competent lay

16   testimony but in rejecting such evidence, he need only provide reasons for doing so that are

17   "germane to [the] witness." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155,

18   1164 (9th Cir. 2008); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.

19   2009). Disregard of this evidence violates the Secretary's regulation that he will consider

20   observations by non-medical sources as to how an impairment affects a claimant's ability to

21   work. 20 C.F.R. § 404.1513(e)(2); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

22   However, inconsistency with medical evidence is a valid reason for rejecting a lay witness's

23   testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d

24   503, 511 (9th Cir. 2001).

25         The ALJ need not discuss lay witness testimony that pertains to whether or not an

26   impairment exists. *Nguyen v. Chater,*  100 F.3d at 1467.  These medical diagnoses are beyond

27   the competence of lay witnesses and therefore do not constitute competent evidence.  20 C.F.R. §

28   404.1513(a).  However, once an impairment has been established by medical evidence, the extent

1 of the diagnosed impairment may be testified to by the lay witnesses.  20 C.F.R. § 404.1513(e);

2 *Sprague v. Bowen*, 812 F.2d at 1232.  Descriptions by friends and family members in a position

3 to observe a claimant's symptoms and daily activities have routinely been treated as competent

4 evidence.  *Id.*

5       Furthermore, where the ALJ's error lies in a failure to properly discuss competent lay

6 testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless

7 it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

8 have reached a different disability determination.  *Stout v. Commissioner, Social Sec. Admin.*

9 454 F.3d 1050, 1056 (9th Cir. 2006).

10       The evidentiary record contains two letters. The first, drafted on March 15, 2007, by

11 Diane Stokes - Plaintiff's sister, reads as follows:

12       Dear Sir/ Madam,
13       I am writing you this letter because it is becoming increasingly apparent
that Carolyn will not be able to fulfil her everyday activities without major
complications. Her physical well being is becoming more of a matter of concern
14 as time goes by. It is blatantly obvious that she is suffering from severe neck and
back problems; so much to the point where it has become almost virtually
15 impossible for her to perform even the simplest of physical task, such as shopping
or running errands. There are many days when she is virtually in tears because she
16 becomes winded and struggles to breath [*sic*], and the only thing I can do to offer
comfort is to make her lay down.
17       It is quite disturbing to see one of your siblings in such a painful
predicament. There is no way that I can not get emotional, because my youngest
18 sister is hurting and there is nothing I can do, so a sense of helplessness
overwhelms me. The only thing I can do to help is to try and lessen her load. I try
19 and help with house work, schedule appointments, and go grocery shopping with
her if she is up to it. Sometimes she has to go back to the car because the physical
20 strain has her sweating profusely. Hopefully you can take everything I said in this
letter into consideration, because my sister's well being has become a major
21 matter of concern. I just pray that the right thing is done for her sake. Thank you
for your time and consideration.
22       Sincerely, Diane Stokes

23 AR 162.

24       The second letter dated April 2007, was penned by Angela Hernandez who has known

25 Plaintiff for the last seven years. Its contents are as follows:

26       To whom it may concern:
27       I have known Carolyn Yates for 7 yrs and during the last couple of years I
have noticed a great change in her health. Carolyn is often in extreme pain. Her
pain consits [*sic*] of neck, back and her hands. I visit her at least 3 times a week to
28 help her do household chores such as sweeping, moping [*sic*], laundry and

washing dishes. She is not capable to do any of time consuming work that she has to be on her feet, even walking a little distance causes her to be in severe pain. There are numerous times that I see Carolyn and she can not get out of bed. She has to stay in bed because of pain, that is not a way of such a young person to live. It makes me sad to see her go threw [*sic*] this. Carolyn Yates deserves the help and care that she deserves.

Thank you for your time, Angela Hernandez

AR 163.

Even though the aforementioned letters were prominently included in the evidentiary record, the ALJ made no reference to them in his decision.  In fact, neither the existence of the letters nor the substance of their contents is addressed in the ALJ's decision. Here, the letters could unarguably qualify as correspondences from family and friends, and "descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d at 1232. Therefore, the ALJ could not outright reject such testimony without giving "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d at 919.  Here, the ALJ proffered no reasons for rejecting either of the letters, and his decision is devoid of any mention of either Diane Stokes or Angela Hernandez, or their observations of Plaintiff's infirmity.

Here, both letters documented the lay witnesses' personal observations of Plaintiff's impairments and how they affected her day-to-day activities. Both witnesses had constant contact with Plaintiff and had known her for an extended period of time. Therefore, both witnesses were in a position to observe Plaintiff's symptoms and daily activities and were therefore competent to testify as to her condition. Under these circumstances, the ALJ could not dismiss the lay witnesses' testimony outright without providing "reasons germane to each witness." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d at 1164.

Nevertheless, the ALJ is not required to comment on "lay witness testimony that pertains to whether or not an impairment exists." *Nguyen v. Chater*, 100 F.3d at 1467. These medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence. 20 C.F.R. § 404.1513(a).  Additionally, "the ALJ is entitled to discount lay testimony that conflicts with medical evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d

1393,1395 (9th Cir. 1984).  Inconsistency with medical evidence is a valid reason for rejecting a

lay witness's testimony.  *Bayliss v. Barnhart*, 427 F.3d at 1218.

Arguably, both letters in this instance described the authors' personal observations of

Plaintiff's symptoms rather than offering unwarranted medical opinions beyond their

competency. For instance, the following excerpt from Diane Stokes' letter simply documents her

personal observations of Plaintiff's condition:

> It is blatantly obvious that she is suffering from severe neck and back
> problems; so much to the point where it has become almost virtually impossible
> for her to perform even the simplest of physical task, such as shopping or running
> errands. There are many days when she is virtually in tears because she becomes
> winded and struggles to breath [*sic.*]

AR 162.

The followings statements excepted from Angela Hernandez' letter also represent her

own observations of Plaintiff's impairments: "Carolyn is often in extreme pain. Her pain consits

[*sic*] of neck, back and her hands."  AR 163.

Furthermore, even though these observations are unsupported by the opinion of Dr. Stoltz

(who reported that he found no objective evidence of any ongoing medical disorders that would

place any limits on Plaintiff's activities) and are also contradicted by Dr. Ginsburg's opinion

(who found that Plaintiff had no exertional, postural, manipulative, visual or communicative

limitations), they are nevertheless supported by the findings of Dr. Krolikiewicz, Plaintiff's

treating physician, who determined that Plaintiff suffers from posttraumatic arthritis in the neck,

and that she has severe obstruction in the lungs.  AR 172, 177, 186, 224.  Dr. Krolikiewicz'

diagnoses would tend to corroborate both witnesses' observations with regard to Plaintiff's neck

pain and shortness of breath. In addition, Angela Hernandez' observations with reference to

Plaintiff's complaints regarding her hand would be supported by the findings of Drs.

Krolikiewicz, Sundaresan and Stoltz that Plaintiff suffered from right carpal tunnel syndrome.

AR 167-169, 171, 173-177.  In short, the lay witness testimony was largely consistent with the

medical evidence in the record and qualified as competent evidence that the ALJ could not

dismiss without comment. The Ninth Circuit has clarified that "lay testimony as to a claimant's

1  symptoms or how an impairment affects ability to work is competent evidence and therefore

2  cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d at 1462.

3       The ALJ was required to consider and comment upon the uncontradicted lay testimony,

4  as it concerned how Plaintiff's impairments impact her ability to work.  Here, the ALJ did not

5  proffer any reasons in his decision for disregarding the lay witness statements.  In fact, he made

6  no reference whatsoever to the lay witness statements of Diane Stokes or Angela Hernandez. The

7  ALJ articulated no reasons for his failure to address competent lay testimony.  Where the ALJ"s

8  error lies in failure to properly discuss competent lay testimony favorable to claimant, a

9  reviewing court cannot consider the error harmless unless it can confidently conclude that no

10  reasonable ALJ, when fully crediting the testimony, could have reached a different disability

11  determination.  *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d at 1056.  Because the ALJ

12  failed to provide any reasons for rejecting competent lay testimony, and because the failure to

13  consider and comment upon uncontradicted lay testimony was not harmless error, substantial

14  evidence does not support the Commissioner's decision that there were jobs that existed in

15  significant numbers in the national economy that Plaintiff could perform.  Hence, this case

16  should be remanded to properly consider the lay witness statements. The ALJ is instructed to take

17  whatever further action is deemed appropriate and consistent with this opinion.

18  B.    <u>Subjective Pain Testimony</u>

19       Plaintiff contends that the ALJ erred in failing to properly evaluate her subjective pain

20  testimony.  More specifically, Plaintiff argues that the ALJ failed to provide clear and convincing

21  reasons for rejecting Plaintiff's subjective complaints.

22       In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

23  pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

24  subjective complaints:

25          An ALJ is not "required to believe every allegation of disabling pain" or
other non-exertional impairment. See *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

26  1989). However, to discredit a claimant's testimony when a medical impairment
has been established, the ALJ must provide "specific, cogent reasons for
disbelief." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th

27  Cir. 1999)(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)). The ALJ

28  must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*

1  Where the ALJ does not find "affirmative evidence" that the claimant is a
malingerer, his "reasons for rejecting the claimant's testimony must be clear and
2  convincing." *Id*.
        Social Security Administration Rulings specify the proper bases for
3  rejection of a claimant's testimony ... An ALJ's decision to reject a claimant's
testimony cannot be supported by reasons that do not comport with the agency's
4  rules. *See* 67 Fed. Reg. at 57860 ("Although Social Security rulings do not have
the same force and effect as the statute or regulations, they are binding on all
5  components of the Social Security Administration, ... and are to be relied upon as
precedents in adjudicating cases."); see *Daniels v. Apfel*, 154 F.3d 1129,
6  1131(10th Cir. 1998)(concluding that ALJ's decision at step three of the disability
determination was contrary to agency regulations and rulings and therefore
7  warranted remand).

8        The ALJ is required to make specific findings assessing the credibility of a plaintiff's

9  subjective complaints. *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 738 (9th Cir. 1991).  In

10  rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and

11  what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834, quoting *Varney v.*

12  *Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  Pursuant to Ninth

13  Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and

14  impairments is unreliable, the ALJ must make a credibility determination with findings

15  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

16  claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

17        "Despite the inability to measure and describe it, pain can have real and severe

18  debilitating effects; it is,  without a doubt, capable of entirely precluding a claimant from

19  working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the

20  degree of pain is unsupported by objective medical findings.  *Id*.  "In order to disbelieve a claim

21  of excess pain, an ALJ must make specific findings justifying that decision."  *Id*., citing

22  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  The findings must convincingly justify

23  the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.  However, an ALJ cannot

24  be required to believe every allegation of disabling pain. "This holds true even where the

25  claimant introduces medical evidence showing that he has an ailment reasonably expected to

26  produce some pain."  *Id*. at 603.

27        Once a claimant produces medical evidence of an underlying impairment likely to cause

28  the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely

17

because the evidence does not support plaintiff's statements. *Lester v. Chater*, 81 F.3d at 834,

citing *Bunnel v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "The ALJ may consider at

least the following factors when weighing the claimant's credibility: [claimant's] reputation for

truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which [claimant]

complains." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's

credibility finding is supported by substantial evidence in the record, we may not engage in

second guessing." *Id.*

Here, the ALJ made specific findings regarding Plaintiff's credibility. He identified with

particularity the evidence he relied upon in concluding that the objective evidence did not

support Plaintiff's "disabling limitations to the degree alleged." Having weighed all the relevant

factors, the ALJ concluded:

> I find the claimant's impairments are not as limiting as she alleges. The
> claimant performs a wide range of activities of daily living, i.e., she is able to
> shop, cook, do dishes, do laundry, go to movies, eat out at restaurants, keep up
> with a relationship with her boyfriend, and visits her mother. It is relevant that
> the claimant has not received treatment consistent with a chronic pain syndrome, such
> as surgery, biofeedback, acupuncture, use of a TNS unit, physical therapy, or
> attendance in a pain clinic. She testified that she only takes over-the-counter
> Tylenol #3 for pain. Furthermore, none of the physicians who evaluated the
> claimant characterized the claimant as being totally disabled or incapacitated by
> reason of any impairment.

AR 15.

Therefore, in evaluating the credibility of the symptom testimony, it appears that the ALJ

did consider the factors set out in SSR 96-7p and 20 C.F.R. §§ 404,1529c(4)(i)(vii),

416.929(c)(4)(i)(vii). See *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and *Bunnel v.

Sullivan*, 947 F.2d at 346. The SSR directs the ALJ to consider the following factors in addition

to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other

   symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for pain relief or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board) ; and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.,* 119 F.3d at 792. Additionally, the ALJ may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ's reasons were amply supported by the evidence in the record. For instance, the ALJ noted that Plaintiff had only been prescribed Tylenol #3 for her neck pain. AR 13, 172.  He further observed from the record that Plaintiff had received routine treatment for these complaints.  AR 13.  He noted that Plaintiff testified that she had not had carpal tunnel surgery even though her treating physician, Dr. Krolikiewicz, had suggested it, and that she only took over the counter medication.  AR 14.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider the lack of medical treatment in assessing credibility).  Furthermore, the ALJ noted that both Dr. Krolikiewicz and cardiologist Dr. Joshi had repeatedly advised Plaintiff to exercise and quit smoking.  AR 14.  Both had emphatically communicated to her the risk factors associated with continued cigarette use.  However, Plaintiff was still smoking a pack a day, or more,  as of the date of the hearing on May 1, 2007.  AR 51.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (claimant's failure to seek or follow prescribed treatment is a proper basis for finding his allegations of disabling pain and other symptoms not credible).

19

1   The ALJ also found that Plaintiff had not required any emergency visits to the hospital for

2   any breathing difficulties and that a pulmonary function test performed in August 2005 was

3   normal. AR 14, 178-179.

4   The ALJ also attached significant weight to Dr. Stoltz' findings.  Based on a consultative

5   examination performed on Plaintiff, Dr. Stoltz concluded that Plaintiff's range of motion of the

6   neck, back and shoulders were within normal limits. Hand grip, wrist extension, flexion, radial

7   deviation and ulnar deviation were all within normal limits. AR 14. Dr. Stoltz concluded, with

8   regard to Plaintiff's functional capacity: "On physical exam, I find no objective evidence for any

9   ongoing medical disorders that would place any limits on claimant's activities." AR 15, 177. The

10   ALJ also noted that the state agency medical consultants had likewise concluded that Plaintiff

11   was capable of working at all exertional levels (with asthma like precautions). AR 15, AR 185.

12   Therefore, based on his review of the entire record, the ALJ concluded that Plaintiff's

13   subjective complaints were not supported by the record as a whole, and he therefore discredited

14   Plaintiff's allegations of disabling pain as not being entirely credible. In sum, the ALJ is entitled

15   to resolve questions of credibility and conflicts in the testimony. *Sample v. Schweiker*, 694 F.2d

16   639, 642 (9th Cir. 1982). Here, the ALJ's credibility determination was supported by substantial

17   evidence, and was sufficiently specific to permit the Court to conclude that the ALJ did not

18   arbitrarily discredit claimant's testimony. *Thomas v. Barnhart*, 278 F.3d at 958.

19

20

21

22

23

24

25

26

27

28

1

## CONCLUSION

2        Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3 substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

4 further proceedings consistent with this opinion. The clerk of this Court is DIRECTED to enter

5 judgment in favor of Plaintiff Carolyn Yates and against Defendant Michael J. Astrue,

6 Commissioner of Social Security.

7

8

9

10

11

12        IT IS SO ORDERED.

13   **Dated:   November 20, 2009**                    **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28